Good morning and may it please the court, Christy Hughes from Federal Defenders on behalf of Mr. Soto-Lopez. The district court denied Mr. Soto-Lopez's habeas petition without conducting an evidentiary hearing because it found that he couldn't satisfy the first prong of Strickland for his ineffective assistance of counsel claims. But 2255B requires an evidentiary hearing if the petitioner has alleged facts that, if true, would entitle him to relief. The district court erred because, seeing the allegations in the petition as true, Mr. Soto-Lopez demonstrated deficient performance. First, he alleged that De Olivas had no basis for promising a 24- or 30-month offer. He was new to the district and unfamiliar with fast-track offers. He made this promise at the very first meeting he ever had with Mr. Soto-Lopez without reviewing any discovery, not knowing any facts of the case, and not knowing Mr. Soto-Lopez's criminal history. Second, not only was there no legal basis for making the promise of a lower plea offer, but Mr. Soto-Lopez alleged that De Olivas made this offer purely for his own financial self-interest to induce Mr. Soto-Lopez to retain him. Third, the promise of a lower offer was unreasonable in light of the common practices in the district. We have two public defenders familiar with the fast-track policies who both said that a 48-month offer was the best offer that Mr. Soto-Lopez was going to get and that he should have taken it. His first counsel reviewed his criminal history, the facts of the case, and said, take the 48-month offer, that's the best you're getting. His sentencing counsel, who was appointed after De Olivas was suspended from the district, said, in his experience, similar clients would have received a 48-month offer, and, in fact, the promise of a lower offer was otherworldly and was a promise that could not be effectuated. Does it matter that the district court offered the defendant an opportunity to withdraw his plea? It doesn't, because at that point, that wouldn't undo the fraud that De Olivas had committed, because at that point, the plea offer was off the table. And what's important is it was kind of more of a charge bargain. It was an offer to plead to three 1325 allegations that would have come not just with the 48-month sentencing recommendation, but with a 54-month statutory cap. And that was far below what he faced once he was indicted for 1326 and faced a 77- to 96-month guideline range. Are you familiar with there's two cases before the U.S. Supreme Court now? I think it's Lafler and Frye. Yes. Which would seem might have some bearing on this particular case. I think they do have a bearing on this case. They deal with ineffective assistance at the plea stage. But I think this court should hold Mr. Soto-Lopez's case for those cases for two reasons. First is that they're really dealing with the second prong of Strickland, the prejudice prong, and the remedy. And the district court here ruled only on the first prong, the deficient performance prong. So what are you asking that we do? Just reverse that and remand it back to the district court to determine the proper remedy? For an evidentiary case, we need to determine if there was a basis for the promise that he made any of that. And then if Frye and Cooper are decided at that point, and the district court can take them into account in determining whether or not there was prejudice and the remedy. And I think that's important because Mr. Soto-Lopez at this point, his sentence, he's out in November. So if this court waits until potentially June, he could end up with no relief. And it's especially unfair because he's been in custody at this point longer than the 48 months that he would have served had he taken that initial plea offer that Daley was interfered with. So you're asking that you just get a reversal on ineffective performance, and then the district court be asked to determine prejudice? I think so. I mean, I think that we clearly laid out prejudice here. I don't think the government even disputes it. I think it's pretty clear that he was intending to plead guilty. The information had been filed. The waiver of indictment had been filed. He was on that path until he met with Daley. Well, except he didn't take the 48 months. So I don't know that it was so clear that he was going to plead guilty. Well, he didn't, but all of the steps were kind of in place. He hadn't shown up for that change of plea hearing yet. The government's plea offer said he had. Well, but that's a big if in terms of, I mean, you can kind of be going along the line, but that doesn't mean, I mean, you're going to plead guilty. It doesn't, but I have two responses. I mean, you're heading towards a trial is what you're doing. Those are the natural steps that you'd be following regardless of whether you're going to plead or not, right? Perhaps, except he had filed his waiver of indictment saying, yes, I agree that I'm going to plead to that information. That was filed on the same day that the information was filed with those three 1325 charges, which were the terms under the plea agreement. So everything was in place until he met with De Olivas, who then continued the change of plea hearing. And once he substituted his counsel, he said, we're entering a not guilty plea. We're going to wait and get indicted. But I think. I mean, what do we do with the cases where the, you know, I mean, there's some really, I don't know, almost silly cases out there where someone says, well, they can't find you guilty of first-degree murder because you shot her below the waist or something like that. Or, you know, there's all sorts of things. There's all sorts of cases that just say that, you know, you're not entitled to a prediction by a lawyer to get a certain, you know, a certain result. You're not, but you are entitled to the right to make an informed decision about whether or not to plead guilty. And so when your right to make an informed decision is interfered with by a lawyer. That makes a bad prediction. But it wasn't just a prediction here. And I think that's, if we look at the allegations and the petition is true, he's alleged not just that this was a prediction that he had a reasonable basis for making this prediction, but actually that he promised this without knowing anything about the case, which I think is deficient performance, and that he did this with a particular motive. He did this to induce Mr. Soto-Lopez to retain him. And that is a little bit different than some of the other cases where it's the same lawyer the whole time. So perhaps it was an accurate prediction, but the lawyer never benefited from that. But the reason your position would be the reason your lawyer didn't, that your client did not take the 48 months is because he thought he could get 24, right? Because his lawyer promised him that he'd get 24, correct. I'm just having difficulty reconciling the cases where the lawyer makes the wrong promise and they're not saying that you're entitled to a correct promise. Well, you're not entitled to a totally accurate promise,  Well, are you arguing there's a difference between a prediction and a promise, or are you arguing that you're not entitled to a correct one? Well, I don't think under the case law you are entitled to a prediction that turns out to be correct, but what you are entitled to is effective advice on whether or not to accept or reject that. My question was, do you contend there's a difference between a prediction and a promise? Yes, I think there is, and that's what we had in this case, was a promise made for a financial motive with absolutely no legal basis. I think that's very different than a prediction that turns out that maybe he had a reasonable basis for making that. Perhaps Dale Levis had three clients that had gotten 24, 30-month offers, and he predicted it turned out not to be true. That would be a very different case. But that's not what we heard. Turner's the most, is the case you have to distinguish, right? I think so. I mean, I think that we're really on good footing with Blalock, which is the lawyer inaccurately or incompetently advises to reject a plea offer that would have capped, it's more of a charge bargain, that would have capped that sentence. The client relies on that advice, rejects that, then gets a much higher sentence that he would have been prohibited from getting had he taken the plea offer that was on the table that he was advised to reject. I don't know. I think that Turner, I mean, you still have a right to make a reasonably informed decision, and that right can't be interfered with by incompetent advice from counsel. So I don't know that we necessarily have to distinguish Turner, because that still upholds the right to make an informed decision about whether or not to reject a plea offer. Unless the Court has further questions, I'll let her go. I just have another question on your disposition that you're requesting. You said that he, I mean, you said that he's already served more than the 48 months in his jail term, but if we made a quick ruling on deficient performance and went back to the district court, he wouldn't necessarily be released. No, he wouldn't. I'm just saying that at this point, any delay at this point, Pat, I mean, he's been in since October 2007, so he's been in the 48 months. So any delay at this point is prejudicing him. It's not prejudicing the government if this court makes a quick ruling and the district court then sorts it out then. If he's released, he wouldn't have any further prejudice. Well, let me ask you this question. It seemed a little odd, but as I understand it, he's due for release in November? Yes, Your Honor. So that after November this case becomes moot, right? Correct. And that's why we're asking that this court not hold the case for Fry and Cooper because that issue could be sorted out once those cases are determined. The district court could address the prejudice or the remedy. But Fry and Loeffler, yeah, Fry and Loeffler, though, are going to be decided before June, right? Correct. And so if they're either against you, then that sort of ends the inquiry. If they're for you, then he can get fairly immediate relief, right? I mean, it might not even have to go to that. I think that's your point, that when the case is decided by June, you'll be in the district court. You won't be up here with submission vacated. And I think even if they went for us on the prejudice prong, the district court still found against him on the first prong, so the district court still has to sort that prong out. Thank you. Steve Miller for the United States. An attorney's tactical decision that doesn't pan out does not necessarily render that counsel ineffective. Really? Is that what you think this is, a tactical decision? Yes. Let me ask you one question about that. Usually we don't consider other cases, but one of the briefs said that for the other people who had been advised by this so-called lawyer before he was disbarred, that the government had set aside those convictions and went back to the original offer. Is that correct? Some did, some did not. What determined which ones did and which ones didn't? Well, in this particular case, it had to do with the defendant's particular record, and that was addressed by the court, district court. So what does that have to do with if you gave him a plea offer before he had the same particular records? He had the same record when you gave him the plea offer? Yes. And despite the record, this was a plea offer you gave him that he would have been entitled to, but for this disbarred lawyer whose conduct you thought enough to set aside the other convictions. See, that's one of the operating assumptions which I believe should be disabused, is that there is a right to a plea agreement. And in this case, this was unusual in that this was a plea straight up. It was without a plea agreement, and it was a plea straight up without a plea agreement before Mr. DeOlivas was debarred from the Southern District of California. There was no agreement on sentencing? Correct. Well, there was an offer to withdraw it too, right? At the time of sentencing, yes. And with that, he was already- Was he advised by Mr. DeOlivas at the time of sentencing? Was he represented? No. No. What had happened was he pled straight up while he was represented by Mr. DeOlivas. Mr. DeOlivas was then disciplined, and then federal defenders was reappointed, and then the federal defenders represented him at sentencing. Then at sentencing, the district court said, well, would you like to withdraw your plea? And then, again, another tactical decision, or the difference between strategic and tactical decision, is that the attorney said that the defendant does not wish to withdraw his plea, which also is further evidence in the record that shows that it is not clear that the defendant would have taken the 48-month deal. Now, wait. The 48-month deal, I was trying to ask you about that before. There wasn't any offer of 48 months? Oh, after his indictment? No. When was it? When was an offer- It was before he was represented by Mr. DeOlivas. Right. Okay. So there was an offer of 48 months. Yes. And then Mr. DeOlivas came along, this disbarred lawyer- Yes. Eventually he disbarred the Southern District of California. Whatever it was, it seems he was a bad enough lawyer that you offered his clients to go back to the offer you had made originally. For some cases, yes. And I said, what's different about this case? And you said, well, he had a bad record. And it was a straight-up plea agreement, so that he preserved the ability to ask for any sentence that he believed would be available. What was the straight-up plea agreement? The first offer? No, the straight-up plea was he pled straight up to the 1326 without a plea agreement. The ones that had been withdrawn, I don't remember. I still don't understand. Okay. You originally offered him 48 months. Correct. All right. The timeline is that on November 15th, 2007, he waived indictment in anticipation of a 48-month plea agreement. Yes. On November 29th, 2007, the change of plea was continued to December 6th. So after he had waived indictment and was preparing with the fast-track plea agreement, that plea was continued. On December 3rd, 2007, Dale Levis represented another person named Gonzalez-Zatella, where that person had a similar record and he received 30 months. On December 6th, 2007, Dale Levis was substituted in as Mr. Soto's petitioner's counsel. On December 12th, 2007, another defendant represented by Dale Levis, Bello Baena, received 30 months. And I forget which one of those, but one of them had a prior conviction for 1326 where he received a 51-month sentence and he was given a 30-month sentence. So within Mr. Dale Levis's personal, professional experience, he had two clients who had as bad, if not worse, records than petitioner in this case and received a 30-month sentence. Then on December 18th, 2007 — Counsel, what's the evidence that Mr. Dale Levis actually looked at Soto Lopez's record or looked at anything concerning the case in order to form that judgment? The only thing in the record of what he did was the assertions made in his petition. Are you representing that his other clients had as bad a record as this client? Yes. If you take a look at the government's supplemental excerpt of records, my response to their petition included exhibits that had not only the fast-track docket for petitioner's fast-track case that has supplemental excerpt of records 18 through 19 that has the timeline as all these events had happened long before petitioner was indicted on December 27th, 2007, but also the records attendant to those two other clients of Dale Levis who received 30-month sentences. And one of the aggravating factors that courts look to when sentencing 1326 people is whether or not there are other prior 1326 convictions. And under these circumstances, within the practice of the Southern District of California, that it is highly unusual for someone who had a 51-month prior sentence for 1326 to receive a 30-month sentence after that sentence. So, yes, the two people whom Mr. Dale Levis represented had as bad or worse records as petitioner in this case, and they received 30 months. But I was asking a slightly different question. How do we know that Mr. Dale Levis even looked at what this person's record was? We don't. It's that the representation is that under this experience, that even if someone were facing a 16-level upward adjustment, that they can't argue a success. And what do you think is the explanation for those two clients of Mr. Dale Levis getting the 30-month sentence? Judicial discretion. Was it different judges? No, it was the same judge. The same judge. But a different judge then. Discretion based on what? Pardon? Discretion based on what? Judicial discretion to impose a sentence. Well, yeah, but usually judges, when they're exercising discretion, have reasons why they're going to a particular level or not. Yes. Okay, so what were the reasons in the other two cases? Well, they were below-guideline sentences. Yes. So I guess There's really no explanation of why he went below the guideline? No, I did not include that in my response to the petition. But do you know? Can you tell us? No. No, I don't know. I don't know. So I guess the question is, all right, so this lawyer had gotten those numbers for people similarly. So that doesn't mean, so are you saying that when he said that, he wasn't just making something up because he was sort of puffing or saying, I've gotten that. But now when he pled open, when the defendant or the appellant pled open, was it legally possible for him to get the 24 months? Yes. How was it? He just didn't get it. He just didn't get it. It was legally possible. So there was no minimum mandatory in this case that a record, the record of sentencing was that he requested a time-served sentence. He asked for 15 months. And then in the alternative, he then asked, because of the circumstances of Mr. Deolivas, that the sentence should be capped at 48 months. And then the judge, the court in this case, took a look at him as an individual and. So the way that you're portraying it, is Turner your best case? Yes. So you're saying this is a Turner situation? Yes. Okay. And see, what I'm saying is that one of the foundations of the defendant's argument in this case is actually an informal fallacy in logic. It's irrelevant conclusion. The fancy Latin name is ignoratio enliching. It's that an argument purporting to. You've waited to use that, right? Huh? All your life? All my life. And so I used it last week. An argument purporting to reach one conclusion is directed to reach another conclusion. And in this case, the argument is Mr. Deolivas was disciplined, therefore he's a bad attorney. And now since he's a bad attorney, any counsel that he gave must have been. What was he disciplined for? It's not just his discipline. What was the reason he was disciplined? He missed court appearances. He showed up unprepared. He missed filing dates. All of the particulars as to why he was disciplined were contained in the exerbo records. Those were the formal petition. They're included in there. And that the court, the district court in this case did not clearly err in finding that there was no causal connection between the reasons for the discipline and his counsel of claim. But you found there was a causal connection enough to give a number of people the opportunity to take the offers you had originally granted, made. For some, yes. Yeah, but without any causal connection? That, you know, I cannot speak to each of those individual cases. Well, if there was a causal connection in those cases, there was a causal connection in this case. Or just fear that the wide blanket of. You know, it's really not very good for the system to make an offer to somebody and have Mr. D. Olivos with his problems, tell him not to take it, and then to say, okay, now you're going to get double or triple what we offered you because of that. It doesn't really. You know, it may be legal, but it's just not something that makes a very good impression on the world of how our judicial, how our justice system works. Now, that may not be relevant. I understand that. I have another question. Yes. Just before we've gone into overtime, but we're asking. Fry and Laffler, are you familiar with the Supreme Court cases? No, I was not. So you don't know whether they could, you don't know, depending on how they come out, whether it could derail your line of argument or not? I confess my ignorance and unfamiliarity with those two cases. All right. You should probably look them up. Well, most definitely. But I'm not familiar with them at this argument. Oh, and one last point. The defense argued for a remand for an evidentiary hearing. This is the first time that I've ever learned that one of the prayers for the relief was a remand for an evidentiary hearing. I don't think that that was requested in the original petitions. So you'd like us either to grant the relief or not? Well, I think that you should deny relief. No, I said, but if we decide either way, if we've got to choose between granting and denying, is that the choice we have, you think? No, I think you probably should remand for evidentiary hearing. Okay. So you should say I welcome it, even if it's the first time. I welcome it. All right. Thank you. Counsel, yes. You may have a couple of minutes to respond. I just want to clear up what Your Honors were discussing about those two 30-month sentences that other clients had received. Those could not have formed the basis for his promise of a 24-, 30-month offer. I think we pointed out in our briefs, those came middle to late December. He had met with Mr. Soto-Lopez before the November 29th change of plea hearing. So that wasn't even in his mind. Well, but on an open plea, could you argue for those sentences? And were they legally possible sentences? I would say sometimes it's something that's just not legally possible. You know that. You could. The district court could have varied 50 months below the guidelines. But that isn't the issue. The issue was it was a promise of a plea offer coming from the government. It wasn't a promise of a sentence after trial, which is what those clients received, which I think Judge Wardlaw pointed out. Judges have different discretion. This was Judge Burns. It wasn't Judge Gonzales, who we had in our case. So it was for different reasons. One of those cases was Gonzales-Vitello, which was reversed and remanded. So those couldn't have formed a basis for his 24- or 30-month offer, which was for his ‑‑ I'm sorry, his advice. Because they occurred after the advice was given. Correct. So they weren't even in his mind. He had no idea. Right. Thank you. All right. Thank you both. The cases will be submitted. The court will take a brief recess.
judges: Reinhardt, Wardlaw, Callahan